1-820-98 Brian Johnson et al. v. Town of Duxbury et al. Good morning, Your Honours. I may it please the Court, my name is Michael Rubio and I represent the plaintiff's appellants in this case. The lead plaintiff is Brian Johnson, a 30-year veteran of the Duxbury Police Department. The other plaintiffs are his live-and-go friend and their two children, one of whom is a minor. This case involves an appeal and a grant of summary judgment on the plaintiff's claims for violations of their constitutional rights under the federal constitution and the state constitution. There are certain sensational facts in this case and certain mundane facts in this case. And so that the sensational facts do not overwhelm the mundane facts, I'd like to just summarize this briefly because I think they're slightly misrepresented in the appellee's brief on page 18. The sensational facts are that in September 2015, a man named Robert McKenna was found murdered in his home in Marshfield. Ten days later, the local paper, the Patriot-Ledger, reported that man, James Ferguson, had been arrested for the murder. Isn't this case going to, or what we have to do with it, going to turn on whether there was a search, whether there was qualified immunity, whether there was apparent authority? Yes, sir. So these facts make any difference? I'm not really asking that to get an answer. I'm just wondering why we can't just move along, get to the appellate issues. Well, we can move along. I just want to make it clear that it informs the state of mind that Mr. Johnson had that led the police department to search his phone records, his and his family members' search records. So I'm just calling attention to page 18 of the appellee brief where they summarize the case as involving a woman claiming to be a potential witness in a criminal case involving murder, assault, and firearms, calling him, looking for help. That wasn't what happened. If you look at the record, he received a call from someone who knew him. I think you're not taking the hint that you need to get on to us. Okay, thank you. What we're really interested in is you've got an argument that the search was unconstitutional and he was coerced into agreeing to waiving his Fourth Amendment rights. That's correct, Your Honor. And the district court rejected that argument. That is correct, Your Honor. So you want to tell us why the district court was wrong in rejecting that argument? Yes, okay. So the similar case in this is O'Connor v. Ortega. And I think it's important to understand that that was a plurality opinion and we're asking for a narrow holding in this case that I think is consistent with O'Connor v. Ortega. What Fourth Amendment interest did you have in the particular documents or information that was turned over? So the third-party doctrine, would you have had any – if the police doing an investigation of the crime had gone over and got that without a warrant, would you have any basis to complain? Okay, I'll call attention to the fact that this is not an argument that was raised by the appellees in the brief, but I take it you're referring to the case of Smith v. Maryland. And I would just say I wonder if the third-party doctrine has the same force it had when Smith v. Maryland was issued in light of the recent case of United States v. Carpenter. Let's assume that Carpenter applies to something different, which is in that issue, because I understand that they did not – your client did not turn over South Tower location information. That's correct. That's correct. So assume Smith is still valid, controlling law. How do you get around Smith with this particular information? Okay, so I think we have to turn to the department's internal investigations policy. And I'm calling attention in particular to the passage that appears on page 116 of the record, where the department makes a clear distinction between department-issued property and personal belongings. Sure. Assume you had a department rave that said under no way should we ever get this stuff from someone, even if they don't have a Fourth Amendment right in it. But you're claiming in this case a constitutional violation that you're required to surrender your Fourth Amendment rights. That's correct. What Fourth Amendment right did you lose, as opposed to a right under a police department policy? Well, the Fourth Amendment protects the right to – where you have a reasonable expectation of privacy. But doesn't Smith say that this particular information, the third-party doctrine, it's all information from the phone company, right? That's correct, Your Honor. So where is his Fourth Amendment interest? Well, so Smith sets the proposition that when you – and you know this, I know you know this very well – that when you turn over information to a third party, that you no longer have an expectation of privacy in that information. So there, when you dial a phone number, then you are giving those numbers to the third-party provider, the telephone company, to complete the call. Here, at least in this case, there is this distinction that you're not – the same level of what's called consent is not involved in numbers that you receive. So there's a distinction there. There's no consent for those numbers to be shared with the third party. So I would at least distinguish it on those grounds, the distinction between numbers dialed and numbers dialing in. So you're saying the violation was not that they required him to turn over all that information, but rather the violation was that they shouldn't have been able to require him to turn over the calls received information. At a minimum, I would say that, Your Honor. Yes. I would say that. He had to answer all of those calls for them to be recorded. Yes, he did. Yes. I would assume that. But even if you just take the third-party documents a step further, bank records, you can certainly get bank records without a warrant. So is it – do we know any precedent about whether you can get phone records without a warrant? I'm not – well, I know that there are certain – the Source Communications Act limits the government's ability to get certain kinds of phone records. I'm not sure if it would apply. Is that right? Do you know what kind? Well, I don't believe it's – I believe it's at least the contents of messages. Yes. I think under the Source Communications Act, you could get these without a warrant, these exact records, right? For the phone log themselves? Yes. I suppose you could. I suppose I would have to concede that. But I would say that the town of Duxborough should be bound by its commitment to expressing policy, that he did have an expectation of privacy in these, and it's also his family members. That's not a Fourth Amendment expectation. That's just a contractual right. If you sued under state law that they breached some employment right, you might have a case. But you're saying it's a Fourth Amendment right. It's an odd thing. I think you're in an odd position because the town of Duxborough doesn't seem to make this point, that you don't have a reasonable expectation of privacy because they're there. I take that. But we can affirm in any manifest in the record. And I guess what I'm just trying to figure out is what is the basis for thinking there is a reasonable expectation of privacy in these records? Under the Historic Communications Act, I assume you could not, this police chief in his role as an administrative actor conducting an administrative search, could not obtain these records. I thought it had to be for a law enforcement purpose. Yes. But I don't know whether that's relevant to the third party analysis. Well, in this case... In other words, I don't know if the reasonable expectation of privacy shifts relationally like that, depending on the purpose for which the information is sought, or whether the right way to think about it is categorical. Since it could be obtained without a warrant for some purposes, you just have no reasonable expectation of privacy, vis-a-vis anybody trying to get it for any purpose. That is an interesting question, and I wish it had been briefed by either side in the paper. But if we can just see that it's an interesting question, then it's hard for you to win given qualified immunity, because that would suggest it's not clearly established that you had a reasonable expectation of privacy, and we could then affirm on that ground. You could affirm. In that case, you would affirm the dismissal of the claim against Chief Clancy individually. But I still think it's important to get to the question of whether or not there was a violation of Mr. Johnson's Fourth Amendment rights here. It would be true for everyone. All your claims would be run up against that same. If it's an interesting question whether or not you had a reasonable expectation of privacy in these records, as opposed to clearly you did not, because it wasn't the law enforcement purpose, so it just becomes unclear, then don't you just lose on the ground that you can't establish that you can overcome a qualified immunity defense? Now maybe they've waived that. Well, it doesn't apply to the town, right? That's your claim. You have a claim against the town here. We do, Your Honor. The town has no qualified immunity defense. It does not. The problem there is you need to prove that there was, A, a Constitution violation, and, B, it was the town that did it as a matter of town policy. And you have a town policy that says just the opposite. So you've got a problem. You don't have your qualified immunity problem. You've got a Monell problem on the town. Right. And so the policy there would have to be the discretion that the policy conferred upon the chief to enforce searches, to enforce, I guess I'll call them searches, under coercion. And here I would say that this does rise to the level of coercion, and I'm going to refer to True v. State of Nebraska, 612 F. 3rd, 676, and the 8th Circuit decision from 2010, where it is the case that coercive, where coercion is used to get around a constitutional right, and I'm saying that that's an issue before the court. But where's the evidence of a town policy of coercing people? I do not think there's anything in the written policy that amounts to coercion. It would be in the discretion. It's something that the discretion granted to chief clancy. Wait. Do you point to any prior incidences that were available to the town governing officials that there was a regular practice of coercing people? No, not that I'm aware of. I don't have a record of establishing that. I think you've got a problem under Monell, then. Yes, there's an issue there, yes. Yes, I agree, Your Honor. But I'm confident and immune to understanding the court's questions. The point would be that if, in line with Smith v. Maryland, the court would take the position that it's not a clearly established constitutional right to get these sorts of records. Right. Again, I'm going to rely on the distinction between numbers dialed and numbers dialed. And there's at least grounds for a limited violation of the Constitution because he had an expectation of privacy in these. And granted, it's reinforced by the contractual commitment in the investigative process. You mentioned an issue about whether they should be bound by their position. I'm just wondering, since you weren't presented with this in their briefing, we're raising it for you now. It seems fair to give you an opportunity to respond to it. But qualified immunity can be waived. So is it the case? Have they effectively waived qualified immunity on this ground? I'm going to argue yes. I'm going to take that life sentence. That's a reasonable way to respond. Yes. If I found the races of grounds for Chief Clance to take advantage of the defense of qualified immunity, yes, that has been waived. And was qualified immunity ultimately the ground, I forget, the district court relied on? The district court relied on a number of grounds. But did it rely on the ground that there was no violation at all? The court held that there was no violation. It did not find there to be an unreasonable search. It found the search to be reasonable and also not to require any kind of warrant. And we're arguing in this case that a warrant should have been required. Again, within the confines of O'Connor v. Ortega, because of the nature of the public employers here. O'Connor said workplace investigations are subject to reasonableness inquiry by public employers because it would be an undue burden to impose on a public employer a warrant requirement because they're not schooled in nationalities of probable cause. And as I argued in my principal brief, this is different. This is a police department that does know probable cause. And it's a long-running investigation. So there's no... Okay, so the court said that there was consent or at least the town was reasonable in concluding that there had been consent given that it was lawyers who consented to it. Right. You have to deal with that. Yes, I agree. I've raised in my brief a question of whether there's a factual dispute as to the nature of consent because Mr. Johnson has testified both in his deposition and in an affidavit that's before the court. I understand part of that affidavit is subject to a motion to dismiss. But isn't apparent authority really when we get right down to it? Isn't that the question? Then we get to the question of whether or not the authority to consent, the apparent authority should be a defense that Chief Clance is entitled to rely upon, but he's the one applying the pressure. So I guess my argument would be that especially given the length of time it took for the compliance with the records request, there was a month, more than a month that elapsed between the final request for redacted records and the time they were actually produced, which at least gives cause for inquiry, I would say, on the town's part. And then also the question is whether if Chief Clance is applying the pressure with the threat of termination, whether he should be... What should the chief have done to assure himself that the representation made by the lawyers was in fact accurate? What more should he do, should he have done? I would think an inquiry should be made through town council as to the reason for the delay, as to whether there was any grounds for Mr. Johnson's apparent reluctance to turn over the records that had been requested. Did I understand you in your brief to be arguing that because of the circumstance in which he was under threat of termination if he didn't hand it over, it simply can't be consensual? Or were you not making that argument? In theory, I think that's maybe going a little bit farther than I went. It's not that in theory it can't be consensual, but in this case it was consensual because of the threat. And it's just not the loss of employment, it's also the loss of benefits. That's what I'm having trouble figuring out. If you don't make the argument that it can't be consensual, just to go back to Chief Judge Howard's, what in the record leaves one with a doubt as to whether it was? In other words, it's through lawyers. It's very clear they're saying here it is. So I just don't understand. I understand an argument that says in this circumstance he can't consent because it basically is your money or your life. But if you're not making that argument to us, then I don't really see what the argument is that there's a fact issue about whether there was consent. Well, then I am going to argue that given the consequences of failure to comply, including the loss of benefits to not only himself but his ex-wife and his child, that that was pressure to which he had no choice but to yield. So I guess I would say it was involuntary. The agreements produced in that context, I guess I would have to argue, was so coercive that it could not be considered voluntary. Thank you. I'm sorry, just before you say that, do you have precedent that would help us figure out how to think about the voluntariness inquiry in an employment setting? So I think I cite in my appellate brief a case cited by two First Circuit decisions, Stone v. University of Maryland Medical System Corporation, Fourth Circuit decision from 1988, 855F2-167, which calls for totality of the circumstances review of voluntariness. And I don't think that's been explicitly adopted by the First Circuit yet, but I would say the totality of the circumstances, including the consequences of failure to comply, would have to be considered here. Thank you. Good morning. I please the Court. John Bates on behalf of the Town of Duxbury and Chief Matthew Clancy. While under investigation for possible violation of departmental rules and regulations, Mr. Johnson made a limited production of redacted phone records to an attorney for the town. He did so with the input, participation, advice, and agreement of his own attorneys. Six weeks later, he retired and thereafter retained to separate counsel and brought this action for violation of his civil rights, maintaining that the search, the request for his records, the limited production of the documents requested was a violation of his Fourth Amendment. So you're arguing authorized consent? We made several arguments below, Your Honor. On this authorized consent argument, suppose the Chief says to him, we're going to have you executed unless you turn over the documents, and he hires a lawyer and the lawyer negotiates not having to turn them all over, but he's still under threat of execution. I don't think we'd say that's a consensual transaction, even if the lawyer was acting. I would maintain, Your Honor, if certainly the first request was broad, and his attorney writes back and says... I don't think anything about that would be consensual if you're under a threat of death. I guess under a threat of death. So in the workplace, if you're under threat of being fired. I would agree, under a threat of death, yes. Pretty good duress if you're under threat of being fired. Well, he maintains that he was under threat of being fired because he had executed a last chance agreement. That's why he was susceptible to being fired. But his allegation is that the Chief said to him, turn over these documents or you're fired. Right, the order says... It's only judgment, we have to assume that's what happened. Correct, the order in the record says... So why isn't that duress officiates consent? Because he was given the opportunity... First of all, with respect to the Stone case, I mean, that's right in the Stone case, Your Honor. This is an employment matter. It's not a matter of being subjected to criminal procedures or criminal process. When your employer says, I want this, and you have to cooperate... Suppose the employer says, give me your car or else you're going to be fired. And the guy says, I really like my car. But you say, all right, we're going to fire you. Okay, I'll give you the car next week. And they say, okay. Would you say there's consent? The officiates are taking a property. I don't think you would. No, I don't think so, Judge. So what's different about this? Well, because in an employment setting, when the Chief has reasonable and legitimate grounds to conduct an investigation, and as part of that investigation, he maintains that he's entitled to certain information. And then he requests that information. Well, suppose the information was in the car. And he says, to get the information, give me your car. Well, in the search of the car, Your Honor, same thing, I think. If we're talking about an employment situation, if the Chief says... I'd like to search your house or I'll fire you. I guess I'm not getting the threat. I mean, if somebody... The threat is being fired. Right. And the government, as a government actor, is purporting to use that as leverage. But there is a process. He has no right to say, if you don't give me your car, you'll be fired. I think... He had protections. So I think we're just conflating two things. If it's within O'Connor, a workplace search, then the threat of being fired for not complying with it can't vitiate the consent. But that's only because he doesn't need the consent. If it's outside O'Connor, then he needs the consent. The Chief. Understood. Okay, so let's assume, for the purpose of this conversation, we're outside O'Connor. In other words, he's trying to get information that's not within the workplace. The search extends beyond that. Then you have an argument, it doesn't matter because it's consensual. Right? Right. But that doesn't seem as good an argument if the reason it's consensual is because if he doesn't consent, he's fired. Well, there is a process available for him, Judge. I mean, the Chief has no right to demand, and Mr. Johnson, as a police officer, knows this. He knows he has a right to withhold consent. I mean, when you look at the voluntary consent... For sure. And the Chief is telling him he's got a right to withhold consent. He's just going to be fired if he does. And if he's fired, then there's a procedure available to protect him. But he's under this last chance agreement, so he's vulnerable to a completely discretionary... No, not completely discretionary. As set forth in the agreement, the decision by the Chief has to be based upon substantial evidence. Okay, so you're saying the gun was in which we may have a threat, but the gun wasn't loaded here. Well, I think that... But the Chief couldn't pull the trigger by himself. Correct. Take this example. The Chief says this. I'm sick of doing administrative searches. I'm just nosy, and I'd like to see what's in your house. I'll fire you if you don't let me look in there. So he says, well, I don't think there's anything that he'll find. I'd rather not be fired. Go ahead and have a look. Was that a consensual search? No, I don't think so. Okay, that's the point. If that's not a consensual search, if this doesn't fall within O'Connor, because it's outside the standards of O'Connor, and doesn't count as a workplace search, then it's just like a nosy police chief asking for something he's got no administrative reason to get. And your defense would be, well, it doesn't matter, because he consented to it. But if he consented to it only because he'd be fired, it doesn't seem very consensual. Well, I would disagree, Judge. He didn't consent to it only because he would be fired. He had counsel to engage, and his counsel... So what if the counsel said to him, he'll be fired. You'd be crazy not to consent. He asked for this much. His attorney said, no, we will give you. My client will voluntarily give to you. He will willingly make diligent efforts to provide you with these documents, providing you specially tailored requests. So you want us to rule that a jury would have to find that if the chief had called up before he got the records and said, you know, I was hasty the other day. I should never have threatened to fire you. It's up to you whether you turn over the documents or not. You want us to rule that a jury would find, would have to find, that he would have then turned over the documents? No, I don't... Well, then it wasn't, you can't say it was consensual. It was always under this threat. The threat of termination was looming there at all points of time. So it seems it therefore moves us away for summary judgment purposes from this consent argument or from the authorized lawyer argument to the substance of what the chief wanted, whether that was violating his constitutional rights, whether it was like a search of the house or it was something different. Well, I don't believe that the consent argument is unavailable to the chief here. Because whether or not it's within O'Connor, say it's outside of O'Connor. Say this is not protected by the reasonableness standard that the O'Connor case applies. If a request is made for records, then you look at the, again, totality of the circumstances and the number of the factors that you include in there, the age, the intelligence, the wherewithal of the individual who's requested to be searched. And the consequences are not compliant. And whether he's under duress or coercion. And duress or coercion in the Stone case and in two First Circuit cases, the Walker case and the Monaghan v. Reardon case, that adopt or support the Stone case, the circumstances there were much more egregious. But do they say that threat of being fired does not count as coercion? Yes. Yes. They both hold that. The Stone case holds that. And that was an individual who was a public doctor who they said, if you don't resign, we're going to fire you. And he resigned. And then he said, well, that was involuntary. And the court said, no, it wasn't. And that was a situation Plaintiff's counsel suggests that because of the time factor here, that should be used against the notion of voluntariness. I would say quite to the contrary. This is a situation where the records were requested in February of 2016. Then that order was suspended for a month. And then the revised order, which was specially tailored at the agreement of Plaintiff's counsel, was issued a month later. Does that dispute in itself raise a question for the jury? I would maintain not. Those facts themselves, with respect to the sequence, with respect to the negotiations with counsel. The inference that can be drawn from those group facts, is that not a question for the jury? I think based upon the undisputed facts in this, again, I'd go back to Stone, which is more egregious and was allowed on a motion for summary judgment. They said as a matter of law, that did not give rise to an argument that the search was involuntary. The consent given to the search was involuntary. And what was the search there? What was it of? Again, I'm sorry, it was voluntariness with respect to the termination. If you don't resign, then we will fire you. Was it a search case? No, it was not, Your Honor. It was a case that talks about duress or coercion. Duress and coercion in the context of whether or not I have to resign, give you what you're looking for. It's an employment case. For Fourth Amendment purposes, your position seems to be that a police chief who's nosy can ask any employee, if he can go into their house and rummage around in it, on threat of them being fired, and if the employee says, I guess so, and I talked to a lawyer about it, and the lawyer said, you really shouldn't lose your job over this, that that's fine. There's no Fourth Amendment problem there. That's your position. That has to be your position. That's what you're arguing. It is, Your Honor. That seems like a pretty extreme position. I don't see why that is. If somebody has the right, I can say no. You can't without losing your job. I will keep my job. I will say no and I will keep my job because I have resources. I have a collective bargaining agreement. I have civil service rights. I have rights under the last chance agreement. He had rights under the last chance agreement. The chief was going to have to show. So you thought that was an empty threat was the idea? No, no. I think so long as the chief's request was a legitimate request. Do you think the chief would win if he then tried to fire him? If he then tried to fire him for failing to cooperate with that? If it's not arbitrary, if it's not capricious, and it's based upon substantial evidence, then he wins. It's not an administrative search. It doesn't fall within O'Connor. Right. It's outside the purview of that. I'm not consenting to that. If you conceded all of that, would the chief be entitled to fire him? It's based upon, if it's outside O'Connor because of the nature of the workplace, I say it's work-related. I think it's an investigation into work-related misconduct. And so long as the chief's request is an investigation into work-related misconduct, I think he's entitled to make that request. And I think that if the plaintiff says, well, I gave it up because I might lose my job, well, the last chance agreement was a voluntary document that you executed. That changed your status. We didn't put you on thin ice. He signed it. The union signed it. So to the extent his status and his rights may have been diminished, he didn't have the full panoply of rights available under the collective bargaining agreement. He didn't have the full panoply of rights available to civil servants. But he still had rights available under the last chance agreement. And he refuses. There may be consequences. And I don't think that's a direct stretch. I do not. And I think the case law would support me on that. I've cited a number of cases that talk about police officers in the context of employment situations where the courts have said, can you help me with something that just is in this case, it relates to a lot of the issues, so there's this issue about consent, there's the issue about whether it's a reasonable expectation of privacy. Let's say I thought that some of these questions are not entirely clear. And suppose I also thought it's kind of a big deal to resolve all of these. So oftentimes, when it's not entirely clear, we can resolve them by saying, qualify the immunity to the fact. And I believe this court can do that. And it would be wonderful if we could in many instances, and maybe it would be wonderful if we could do it here. My concern is whether you have waived our ability to do that based on the argument that you've made. I understand. We have not waived the argument. One way one can waive qualified immunity is by not raising it. You clearly raised qualified immunity, but did you raise the argument that the reason you have qualified immunity is because various of these things are not clearly established? In the brief, the first thing this court has to decide is whether or not there was a search. Second thing this court has to decide is whether or not the search is reasonable. And all of those things, I think, infuse the qualified immunity decision. I don't think this court has to get to that. I think the easier route is to get to that. Did you argue to us that the reason you win on qualified immunity is because those things were not clearly established, as opposed to on the ground that there was no violation at all, or is that not a difference? With respect to the O'Connor case, I do maintain, Judge, that the law does not clearly establish whether or not the workplace issue. Plaintiff maintains that it has to be within the workplace, the search within the police station. I maintain that the O'Connor case and its progeny is broader than that. Do you have a non-workplace case in Sosa, O'Connor that you can cite to us? I forget the last name of the case. I think it's the Seventh Circuit. It's in my brief, Judge. The Carter case. And what was that search of? It was an off-site search of a police officer at a scene, at a crime scene, and they wanted to know whether he had taken some of the evidence. And I did not cite it in my materials, Judge, but there is a First Circuit case that I think is relevant. O'Brien v. DeGrazia. It was a First Circuit case from 1976. The site is 544F2nd, 543. And that was a case in which, if I can just finish this point, that was a case in which the Boston police commissioner had some questions about the integrity of some officers. So the Boston police commissioner ordered them to produce financial records. A questionnaire in producing financial records about assets, expenditures for the last six years, five years, tax returns. And that was thrown out on a motion to dismiss and upheld by the First Circuit. And the court said, even if it is a search, raising the issue of maybe it's not a search, but even if it is a search, it's reasonable. Please submit a Rule 28J letter with just the citation to that case, no argument, just so that we have it. Certainly, Your Honor. If you don't have any further questions, I'll rely on that brief. Thank you. Thank you both.